## IN RE DEXTER P.*

SUPERIOR COURT
JUVENILE MATTERS

LEVIN, J. The issue of first impression in the present case is whether a juvenile who is charged with having committed serious juvenile offenses and whose order of detention has not been timely reviewed or renewed within the fifteen day period prescribed by the rules of practice is entitled to immediate release. The court holds that he is not.

On January 6, 1994, a petition was signed and notarized charging that on December 3, 1993, the respondent child, age fourteen, had committed the crime of use of a motor vehicle without the owner's permission, in violation of General Statutes § 53a-119b. A hearing on the petition was ordered for February 4, 1994. On

---

* Thus entitled in accordance with the spirit and intent of General Statutes § 46b-124 and Practice Book § 1060.1.

February 4, 1994, apparently because service of the petition had not been made on the respondent or his parents, the court ordered that the respondent and his parents be subpoenaed to appear on February 25, 1994.

On February 25, 1994, the respondent appeared before the court and exercised his right to remain silent with respect to the allegations in the petition. A pretrial was ordered to be held on March 24, 1994 at 10 a.m.

On Friday, March 18, 1994, the respondent was arrested and charged with having committed the crimes of sexual assault in the first degree, in violation of General Statutes § 53a-70a, and unlawful restraint in the first degree, in violation of General Statutes § 53a-95. By statutory definition, each of those crimes is a "serious juvenile offense." General Statutes § 46b-120.

On the following Monday, March 21, 1994, the respondent appeared before the court for a detention hearing. At the conclusion of that hearing, the court found that there was probable cause to believe that the respondent had committed the serious juvenile offenses charged. The court also found that "[t]here is a strong probability the child will commit or attempt to commit other offenses injurious to him . . . or to the community before court disposition" and that "[t]here is probable cause to believe that the child's continued [residence] in his . . . home pending disposition will not safeguard the best interests of the child and of the community because of the serious and dangerous nature of the acts set forth in the . . . petition of delinquency." See General Statutes § 46b-133 (d); Practice Book § 1031.1 (2).[1] The court thereupon remanded

[1] General Statutes § 46b-133 (d) provides: "The court or detention supervisor may turn such child over to a youth service program created for such purpose, if such course is practicable, or such child may be detained pending a hearing which shall be held on the business day next following his

the respondent to the juvenile detention facility "until further order of this Court. . . ." At that time, the court also ordered that the detention order be reviewed on April 4, 1994.

The parties have stipulated that, because of an oversight by a probation officer, the case was not docketed for a review of the detention order on April 4, 1994. The respondent remained detained in the detention facility. On Friday April 15, 1994, his attorney presented to this judicial officer a motion seeking the respondent's release from the detention facility because the order of detention had not been renewed. On Monday, April 18, 1994, the motion was heard by the court and the order of detention was reviewed. The respondent was ordered detained until May 2, 1994, or until further order of the court.

The basis of the respondent's motion for release is Practice Book § 1032.1, entitled "Release from deten-

---

arrest. No child shall be detained after such hearing or held in detention pursuant to a court order unless it appears from the available facts that there is probable cause to believe that the child has committed the acts alleged and that there is (1) a strong probability that the child will run away prior to court hearing or disposition, (2) a strong probability that the child will commit or attempt to commit other offenses injurious to him or to the community before court disposition, (3) probable cause to believe that the child's continued residence in his home pending disposition will not safeguard the best interests of the child or the community because of the serious and dangerous nature of the act or acts he is alleged to have committed, (4) a need to hold the child for another jurisdiction or (5) a need to hold the child to assure his appearance before the court, in view of his previous failure to respond to the court process. Such probable cause may be shown by sworn affidavit in lieu of testimony. No child shall be released from detention who is alleged to have committed a serious juvenile offense except by order of a judge of the superior court. In no case shall a child be confined in a community correctional center or lockup, or in any place where adults are or may be confined, except in the case of a nursing infant; nor shall any child at any time be held in solitary confinement. When a female child is held in custody, she shall, as far as possible, be in the charge of a woman attendant." Practice Book § 1031.1 (2) contains the same criteria for the detention of a child.

tion." Paragraph 2 of that section provides in relevant part: "At the conclusion of the initial detention hearing, the court shall issue an order for detention on finding that at least one of the factors outlined in paragraph (1) of Sec. 1031.1 applies to the child. (a) If the child is placed in detention, such order for detention *shall* be for a period *not to exceed fifteen days,* including the date of admission, or until the dispositional hearing is held, whichever is the shorter period, *unless, following a further detention hearing, the order is renewed; such hearing may not be waived."* (Emphasis added.)

"The rules of statutory construction apply equally to statutes and rules of practice; *Grievance Committee* v. *Trantolo,* 192 Conn. 15, 22, 470 A.2d 228 (1984); and in the interpretation of statutes the word 'shall' may have a meaning that is directory rather than mandatory. *Fidelity Trust Co.* v. *BVD Associates,* 196 Conn. 270, 278, 492 A.2d 180 (1985). The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 68, 82 A.2d 345 (1951). If it is a matter of substance, the statutory provision is mandatory. *State ex rel. Eastern Color Printing Co.* v. *Jenks,* 150 Conn. 444, 451, 190 A.2d 591 (1963). If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. *Winslow* v. *Zoning Board,* 143 Conn. 381, 388, 122 A.2d 789 (1956). Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply. *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522,

529, 265 A.2d 75 (1969). *Fidelity Trust Co.* v. *BVD Associates,* supra, 278." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki,* 219 Conn. 473, 480–81, 595 A.2d 819 (1991), cert. denied, 502 U.S. 1094, 112 S. Ct. 1170, 117 L. Ed. 2d 416 (1992); see *Brown* v. *Smarrelli,* 29 Conn. App. 660, 663–64, 617 A.2d 905, cert. denied, 225 Conn. 901, 621 A.2d 284 (1993); *Rowe* v. *Godou,* 12 Conn. App. 538, 542–43, 532 A.2d 978 (1987), rev'd on other grounds, 209 Conn. 273, 550 A.2d 1073 (1988); *In re Adrien C.,* 9 Conn. App. 506, 510–11, 519 A.2d 1241, cert. denied, 203 Conn. 802, 522 A.2d 292 (1987).

Section 1032.1 (2) does contain "negative words." It provides that an "order for detention shall be for a period *not* to exceed fifteen days . . . ." (Emphasis added.) That, however, is only one guide; it is not the test and is not dispositive. See *State* v. *One 1976 Chevrolet Van,* 19 Conn. App. 195, 198, 562 A.2d 62 (1989) (requirement that defendant be summoned to appear at particular time that "shall not be less than six nor more than twelve days" held directory).

First, "[i]t is well settled that one of the more reliable guides in determining whether a statutory provision is directory or mandatory is whether the provision is accompanied by language that expressly invalidates any action taken after noncompliance with the provision. See *Chesson* v. *Zoning commission,* 157 Conn. 520, 527, 254 A.2d 864 (1969); *Donohue* v. *Zoning Board of Appeals,* [155 Conn. 550, 554, 235 A.2d 643 (1967)]; *Winslow* v. *Zoning Board,* [143 Conn. 381, 384, 122 A.2d 789 (1956)]; *Arrieu* v. *Litchfield,* 17 Conn. App. 320, 324, 552 A.2d 445 (1989); see also *Fidelity Trust Co.* v. *BVD Associates,* [supra, 196 Conn. 278]." *Ruotolo* v. *Inland Wetlands Agency,* 18 Conn. App. 440, 448, 558 A.2d 1021, cert. denied, 212 Conn. 806, 563 A.2d 1356 (1989); see *Ghent* v. *Planning Commission,* 219 Conn. 511, 516 n.4, 594 A.2d 5 (1991); *Yanni* v. *Del-*

*Ponte,* 31 Conn. App. 350, 354, 624 A.2d 1175 (1993). Practice Book § 1032.1 (2) does not contain language expressly invalidating an order of detention where the order is reviewed and renewed after the fifteen day period.

*State* v. *Olds,* 171 Conn. 395, 370 A.2d 969 (1976), is not "on all fours" with the present case; nonetheless, it is instructive. There, the defendant moved to dismiss charges of robbery in the first degree, unlawful restraint in the first degree and assault in the second degree. The basis of the defendant's motion to dismiss was that after being bound over to the Superior Court, he was held in a correctional center in excess of forty-five days without being presented in court, in violation of § 54-53a of the General Statutes (Rev. to 1975), which provided: "No person who has not made bail shall be detained in a community correctional center pursuant to the issuance of a bench warrant or for arraignment, sentencing or trial for an offense not punishable by death, for longer than forty-five days, unless at the expiration of such forty-five days he is presented to the court having cognizance of the offense. On each such presentment, such court may reduce, modify or discharge such bail, or may for cause shown remand such person to the custody of the commissioner of correction. On the expiration of each successive forty-five day period, such person may again by motion be presented to the court for such purpose." Practice Book § 677 contains similar language.

The trial court denied the defendant's motion to dismiss. The Supreme Court affirmed, stating: "The right to be released on bail upon sufficient security is a fundamental constitutional right, and any order made by the trial court denying or fixing the amount of bail is subject to appellate review. Conn. Const., art. I § 8; Practice Book § 694. On the other hand, § 54-53a purports to mandate only the procedure for implement-

ing this right and *provides no sanction in the event there is a violation.* The denial of any right under the statute does not involve a fundamental constitutional right, and the defendant has made no showing of prejudice which would entitle him to a dismissal of the information." (Emphasis added.) *State* v. *Olds,* supra, 171 Conn. 404.

Second, it is significant that the judges of the Superior Court, as the promulgators of the Practice Book rules; General Statutes §§ 51-14, 51-15, 51-15a; Practice Book § 7; have, in other sections, expressly provided consequences for the failure to act in a timely manner. Cf. *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* 225 Conn. 432, 441–42, 623 A.2d 1007 (1993). For example, in civil actions, Practice Book § 112 prescribes the order of pleadings; Practice Book § 113 provides that filing a pleading out of order waives "the right to file any pleading which might have been filed in due order and which precedes it in the order of pleading provided [in § 112]." See *Daley* v. *Gaitor,* 16 Conn. App. 379, 389, 547 A.2d 1375, cert. denied, 209 Conn. 824, 552 A.2d 430 (1988). Practice Book § 144 provides that certain jurisdictional claims, other than a claim that the court lacks subject matter jurisdiction, are waived if not filed in the sequence provided for in Practice Book § 112. Between October 1, 1983, and October 1, 1989, Practice Book § 155 provided that an adverse party who failed to file in a timely manner a memorandum of law in opposition to a motion to strike was deemed to have consented to the granting of the motion. See *Hughes* v. *Bemer,* 200 Conn. 400, 402–403, 510 A.2d 992 (1986), subsequent proceeding, 206 Conn. 491, 493, 538 A.2d 703 (1988). Practice Book § 220 (D) provides that if information relating to an expert witness is not timely disclosed, the expert shall be precluded from testifying except in the discretion of the court for good cause shown. See *Mulrooney* v.

*Wambolt,* 215 Conn. 211, 575 A.2d 996 (1990). Practice Book § 239 provides that requests for admission shall be deemed admitted unless the party to whom the request is directed timely answers or objects to the request. See *Gagne* v. *National Railroad Passenger Corp.,* 26 Conn. App. 74, 77, 597 A.2d 836, cert. denied, 220 Conn. 931, 599 A.2d 382 (1991). Practice Book § 344 provides that if, in a civil action, a plaintiff does not accept a defendant's offer of judgment within thirty days, the offer "shall be deemed to be withdrawn . . . ." If the plaintiff does not recover more than the amount in the offer, he may not recover his costs but shall pay the defendant's costs. Practice Book § 348 provides that if a defendant does not accept a plaintiff's offer of judgment within thirty days, the offer is deemed to be rejected. If the plaintiff later recovers an amount equal to or greater than his offer, he shall be entitled to interest on the judgment and may also recover attorney's fees. Practice Book § 350; see *Gillis* v. *Gillis,* 21 Conn. App. 549, 555, 575 A.2d 230 (1990), cert. denied, 215 Conn. 815, 576 A.2d 544 (1990).

The applicable tenets of statutory construction counsel this court to ascribe significance to the absence, in Practice Book § 1032.1 (2), of the explicit provisions for automatic consequences found in other provisions of the Practice Book. *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* supra, 225 Conn. 441. "It is a principle of statutory construction that a court must construe a statute as written. *Zachs* v. *Groppo,* 207 Conn. 683, 690, 542 A.2d 1145 (1988); *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987). 'Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them.' (Internal quotation marks omitted.) *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974); see also *State*

v. *Bunkley,* 202 Conn. 629, 640, 522 A.2d 795 (1987); *State* v. *One 1977 Buick Automobile,* 196 Conn. 471, 485, 493 A.2d 874 (1985). 'The intent of the legislature . . . is to be found not in what the legislature meant to say, but in the meaning of what it did say.' *Burnham* v. *Administrator,* 184 Conn. 317, 325, 439 A.2d 1008 (1981)." *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* supra, 441–42. The court cannot rewrite a Practice Book provision to accomplish a particular result. That is the function of the Rules Committee of the Superior Court. Practice Book § 7. "[T]his court does not sit as the Rules Committee of the Superior Court." *State* v. *Johnson,* 228 Conn. 59, 61–62, 634 A.2d 293 (1993). Because other sections of the Practice Book provide automatic consequences for untimely action, it can be inferred that, had the judges of the Superior Court intended that a failure to renew an order of detention by the fifteenth day of the initial order would result in the automatic release of the detainee, they would have so provided. Cf. *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* supra, 442; *Caron* v. *Inland Wetlands and Watercourses Commission,* 222 Conn. 269, 277–80, 610 A.2d 584 (1992).

Third, "courts lack the power to promulgate rules governing substantive rights and remedies. General Statutes § 51-14 (a); *State* v. *Clemente,* [166 Conn. 501, 510–11, 516, 353 A.2d 723 (1974)]; see *State* v. *Rodriquez,* 180 Conn. 382, 385–86, 429 A.2d 919 (1980). Additionally, the court rules themselves are expressly limited in scope to practice and procedure in the Superior Court; Practice Book § 1; and do not purport to reach beyond such limits." *Steadwell* v. *Warden,* 186 Conn. 153, 162–63, 439 A.2d 1078 (1982); see *Ackerman* v. *Union & New Haven Trust Co.,* 91 Conn. 500, 505, 100 A. 22 (1917). Not only would inferring a right to automatic release of a detained juvenile after fifteen

days confer a substantive right not found in General Statutes § 46b-133, in this case it would collide four-square with a provision of General Statutes § 46b-133 (d) that unequivocally states: "No child shall be released from detention who is alleged to have committed a serious juvenile offense except by order of a judge of the superior court." The court must presume that in adopting Practice Book § 1032.1 (2), the judges of the Superior Court "intended the rule not to alter the statute but to harmonize with it." *State* v. *Matula,* 2 Conn. Cir. Ct. 127, 129, 196 A.2d 124 (1963).

Finally, to infer a right to automatic release of the juvenile on the facts here would clearly be a bizarre result. While there may be circumstances where the law requires that "[t]he criminal is to go free because the constable has blundered"; *People* v. *Defore,* 242 N.Y. 13, 21, 150 N.E. 585 (1926); " '[f]or the reason that individuals or the public should not be made to suffer for the dereliction of public officers, provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory.' 2A Sutherland, Statutory Construction (4th Ed. Sands) § 57.19. Unless there is reason to believe that the legislature intended that the duty not be performed at all except within the time prescribed or that the time restriction should be considered a limitation upon the power of the tardy officer, failure to act within the time specified should not invalidate the action taken. Id." *Tramontano* v. *DiLieto,* 192 Conn. 426, 432, 472 A.2d 768 (1984). Where, as here, a juvenile respondent has been charged with the "serious juvenile offense[s]" of sexual assault in the first degree and unlawful restraint in the first degree, where a judge of the Superior Court has found that there is probable cause to believe that the respondent committed those acts and has found that there is a strong probability that the child will commit or attempt to commit other

offenses before court disposition, it would be unreasonable to conclude that an individual is entitled to release simply because a probation officer, acting in a clerical and ministerial capacity, inadvertently failed to docket a detention review hearing in a timely manner as ordered. The court eschews the respondent's proposed interpretation of § 1032.1 (2) because it would lead to a bizarre result; see *State* v. *Parmalee,* 197 Conn. 158, 165, 496 A.2d 186 (1985); *State* v. *One 1976 Chevrolet Van,* supra, 19 Conn. App. 199; that, on these facts, the enactors of the rule did not intend. Cf. *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* 206 Conn. 554, 575, 538 A.2d 1039 (1988). "It is to be presumed that the [enactors of § 1032.1 (2)] did not intend to work an absurd consequence." *Bridgeport* v. *Stratford,* 142 Conn. 634, 643–44, 116 A.2d 508 (1955).

The "essence of the thing to be accomplished" in Practice Book § 1032.1 (2) is that no child be detained unless one or more of the criteria set forth in Practice Book § 1031.1 exists. That is the substantive component of § 1032.1 (2) and that part is mandatory. *Statewide Grievance Committee* v. *Rozbicki,* supra, 219 Conn. 473. The purpose of the fifteen day review provision in Practice Book § 1032.1 (2) is to secure the early, orderly and systematic review of the circumstances that warranted the original order of detention and to determine whether those circumstances or others require the juvenile's continued detention. The language of the subsection reflects that neither administrative convenience nor the convenience of counsel may supersede the early and timely convening of the detention review hearing. This is underscored by the provision that the hearing "may not be waived." The Practice Book, however, does not authorize the automatic release of the detained juvenile if the detention hearing is held beyond the fifteen day period because of administrative oversight. The fifteen day provision, therefore, is directory. *Caron*

v. *Inland Wetlands and Watercourses Commission,* supra, 222 Conn. 280; *Ghent* v. *Planning Commission,* supra, 219 Conn. 516 n.4; *Fidelity Trust Co.* v. *BVD Associates,* supra, 196 Conn. 278; *Tramontano* v. *DiLieto,* supra, 192 Conn. 432; *State* v. *White,* 169 Conn. 223, 238, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975); *Broadriver, Inc.* v. *Stamford,* supra, 158 Conn. 522; *Winslow* v. *Zoning Board,* supra, 143 Conn. 381; *International Brotherhood of Teamsters* v. *Shapiro,* supra, 138 Conn. 57; *Yanni* v. *DelPonte,* supra, 31 Conn. App. 350; *Brown* v. *Smarrelli,* supra, 29 Conn. App. 660; *Rowe* v. *Godou,* supra, 12 Conn. App. 538; *In re Adrien C.,* supra, 9 Conn. App. 506.

The respondent's motion for release is denied.